UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**NICOLE L. PFLUGHOEFT,**

        **Plaintiff,**

        v.                                           **Case No. 19-CV-1548**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

---

**DECISION AND ORDER**

---

**1. Introduction**

Plaintiff Nicole Pflughoeft alleges that she has been disabled since April 30, 2014. (Tr. 228.) She seeks disability insurance benefits. After her application was denied initially (Tr. 83-94) and upon reconsideration (Tr. 114-17), a hearing was held before an administrative law judge (ALJ) on April 17, 2018 (Tr. 54-82). On June 22, 2018, the ALJ issued a written decision concluding that Pflughoeft was not disabled. (Tr. 31-53.) The Appeal's Council (AC) granted Pflughoeft's request for review and issued an unfavorable decision on August 29, 2019. (Tr. 1-27.) Pflughoeft then filed this action. All parties have

consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and the matter is ready for resolution.

**2. AC's Decision**

In determining whether a person is disabled the AC applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the AC determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The AC found that Pflughoeft "did not engage in substantial gainful activity from the alleged onset date of April 30, 2014 through the hearing decision date." (Tr. 7.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The AC concluded that Pflughoeft has the following severe impairments: "left knee degenerative joint disease status post total knee replacement; right knee degenerative joint disease; cervical, thoracic, and lumbar degenerative disc disease; minimal bilateral hip degenerative joint disease; and obesity." (Tr. 7.)

At step three the AC is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or

2

medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The AC found that Pflughoeft "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 10.)

In between steps three and four the AC must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the AC must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The AC concluded that Pflughoeft has the RFC

> to perform a range of sedentary work as defined in 20 CFR 404.1567 except the claimant is precluded from pushing or pulling leg controls; can occasionally climb ramps and stairs if there is a handrail; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can have no more than occasional exposure to vibration.

(Tr. 12.)

After determining the claimant's RFC, the AC at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R.

3
Case 2:19-cv-01548-WED   Filed 11/12/20   Page 3 of 12   Document 24

§§ 404.1520(a)(4)(iv), 404.1560. The AC concluded that Pflughoeft "is unable to perform any past relevant work." (Tr. 22.)

The last step of the sequential evaluation process requires the AC to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the AC concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 23.) Accordingly, it found that Pflughoeft "was not under a disability, as defined in the Social Security Act, from April 30, 2014, the date the claimant alleged that disability began, through June 27, 2018, the date of the Administrative Law Judge's Decision." (Tr. 24.)

### 3. Standard of Review

The court's role in reviewing an AC's decision is limited. It must "uphold [the AC]'s final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez*

*ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the [AC]'s disability determination, [the court] must affirm the [AC's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. RFC—Rejection of Medical Opinions**

Pflughoeft argues that the AC erred because its RFC finding was not endorsed by any medical opinion. (ECF No. 18 at 11.) Rather, the AC adopted a middle-ground RFC after it rejected the Agency physicians' opinion as not restrictive enough and rejected the treating physician's opinion as too restrictive. Pflughoeft argues, "By not adopting any of the physician opinion evidence, the AC was faced with an evidentiary deficit." (ECF No. 18 at 11-12 (citing *Suide v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010); *Freismuth v. Astrue*, 920 F. Supp. 2d 943, 952 (E.D. Wis. 2013)).) "The AC erred," she argues, "when it did not obtain or rely on evidence to fill this void." (ECF No. 18 at 12.) In Pflughoeft's view, the AC made "its own independent assessment not tethered to the record." (ECF No. 18 at 12 (citing *Kraft ex rel. Kraft v. Berryhill*, 17 CV 802, 2018 WL 4381017, *5 (E.D. Wis. Sept. 14, 2018); *Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. 2006)).)

Pflughoeft argues that the AC erred by applying a "split-the-baby" approach to its assessment of the medical evidence. (ECF No. 18 at 12.) Perhaps a better allusion is to

*Goldilocks*—one assessment was too restrictive; one was not restrictive enough; and so the AC found a third option it considered just right.

The AC's conclusion as to Pflughoeft's RFC need not coincide with the opinion of any medical expert. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The AC is expected to weigh the medical evidence and resolve conflicts in that evidence to determine the claimant's RFC. *See* 20 C.F.R. § 404.1546(c). In doing so, the AC does not offer an impermissible medical opinion but rather performs its duty to assess the medical evidence. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Thus, faced with medical opinions at two ends of the spectrum, an adjudicator may appropriately discount both and conclude that the claimant's RFC lies somewhere between the extremes. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

The AC, however, cannot simply split the difference between two opinions. It must still connect its RFC conclusion with the medical evidence. In other words, not only must the AC explain why the medical experts were wrong, but it must explain why it is right. Simply because its RFC fell between two rejected medical opinions is not, without more, a sufficient explanation. *Kraft v. Berryhill*, No. 17-CV-802, 2018 U.S. Dist. LEXIS 157074, at *13 (E.D. Wis. Sep. 14, 2018) (citing *Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. 2006)). Thus, the court turns to whether the AC adequately explained the basis for its RFC finding.

**4.2. RFC—Ability to Sit**

Pflughoeft argues that the AC erred in its RFC finding by failing to consider evidence that she was limited in her ability to sit for long periods of time. Pflughoeft variously reported that she could sit for only 30 (Tr. 525; 566), 60 (Tr. 490), and 10 (Tr. 61) minutes at a time. Her treating physician opined that she could sit for up to 30 minutes. (Tr. 845.)

The AC concluded the Pflughoeft could sit for up to six hours in a workday. However, it never explained how it concluded that Pflughoeft could sit that long. Nor did it articulate how long she could sit without having to stand.

Amidst the AC's discussion of the evidence are facts that might support a conclusion that Pflughoeft's impairments, including her ability to sit, were not as severe as she alleged—e.g., objective medical evidence suggesting minimal abnormalities and limitations; her attempt to find part-time employment; and her ability to care for her son. *Cf*. SSR 16-3p. But the court would be just guessing whether the AC relied on any of this evidence to apparently conclude that Pflughoeft could meet the prolonged sitting requirements of sedentary work. *Moore v. Colvin*, 743 F.3d 1118, 1128 (7th Cir. 2014) ("the reviewing court should not have to speculate as to the basis for the RFC limitations").

Moreover, to the extent the AC may have been relying on the relatively mild objective findings to discount Pflughoeft's sitting limitations, it does not appear that the AC considered how Pflughoeft's obesity might exacerbate the symptoms resulting from

mild abnormalities. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.") It is the AC's obligation to build the requisite "accurate and logical bridge" between the evidence and its conclusion, *see Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016), and the AC failed to do so here.

Sedentary work does not require the ability to sit for the entire workday (and thus the worker periodically will be able to stand) (*see* Tr. 79 (testimony of vocational expert)), but it *does* contemplate "prolonged sitting," SSR 83-12. The frequency with which a worker will need to stand and, perhaps, walk, and the flexibility she will require to do so on her own schedule, will greatly impact which jobs are available. *See* SSR 96-9p ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."); (*see also* Tr. 79 (vocational expert testimony that the need for a sit / stand option would preclude the identified jobs)).

Thus, the AC did not adequately account for Pflughoeft's claimed limitation in prolonged sitting when it limited her to sedentary work. The AC failed to adequately discuss the evidence that Pflughoeft was significantly limited in her ability to sit for prolonged periods and either explain why her limitation was not as severe as alleged or incorporate the limitation in its RFC finding. Consequently, remand is required.

8
Case 2:19-cv-01548-WED   Filed 11/12/20   Page 8 of 12   Document 24

**4.3. Symptom Severity**

Pflughoeft makes an overlapping argument that the AC more generally "failed to set forth a legally sufficient symptom evaluation." (ECF No. 18 at 15.) Although the AC identified certain activities Pflughoeft engaged in, she argues that it erred by failing to explain how this evidence was inconsistent with her symptoms. (ECF No. 18 at 15-16.)

The AC stated, "While the claimant has been diagnosed with and received treatment for several medically determinable impairments, the medical evidence of record is not consistent with the alleged severity of the claimant's reports of symptoms." (Tr. 13.) As examples of inconsistencies it noted that she

> was looking into working at the DMV for a couple of hours two to three times a week and was trying to walk the dog every other day. She demonstrated the ability to maintain physical stamina during sedentary activities during a vocational evaluation as well as the ability to work independently and concentrate on task. Pleasant communication and interpersonal skills were observed throughout the evaluation process. She reported in a chiropractic progress evaluation her back pain had gotten much better. Her back pain was noted to be well controlled. An injection into her right knee provided moderate relief. The claimant reported she provides significant care for her son due to his neurological condition and was fighting for his disability. She testified she drove him to school every day. The claimant indicated her son has special needs who requires numerous visits to the doctor appointments and hospitals which requires a large amount of movement for her which is difficult with her ailments.

(Tr. 13 (citations omitted).)

Pflughoeft's criticisms focus on the AC's reliance on "activities such as walking her dog every other day, caring for her special needs son, and hoping to get a part-time

job." (ECF No. 18 at 15.) As she notes, these activities are not necessarily inconsistent with a claim of disability or her claims regarding the severity of her impairments. *See, e.g., Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016) ("sheer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child"). But the AC offered other reasons and collectively these could amount to reasons to discount the reported severity of a claimant's symptoms.

The error, however, was that the AC failed to connect its discussion to specific symptoms. Simply reciting certain evidence indicating the claimant's positive abilities and saying that it suggests that the claimant's symptoms are not as severe as alleged is insufficient under SSR 16-3p. The adjudicator must connect that evidence to specific symptoms or alleged limitations. *See* SSR 16-3p ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."). In some cases, the connection may be evident without explanation. But here there is no basis for concluding that the AC's discussion suggested a conclusion that Pflughoeft's ability to sit was not as limited as she alleged. On remand it will be necessary to re-evaluate the severity of Pflughoeft's alleged symptoms in accordance with SSR 16-3p.

10
Case 2:19-cv-01548-WED   Filed 11/12/20   Page 10 of 12   Document 24

### 4.4. Opinion Evidence

Pflughoeft argues that "the AC impermissibly substituted its opinion for that of a treating medical professional" when it discounted the opinion of Pflughoeft's treating physician. (ECF No. 18 at 18.) She continues:

> [T]he AC's select review of medical evidence to discount Dr. Hughes's opinion omitted that Ms. Pflughoeft had severe arthritis requiring left knee replacement and near term right knee replacement, chronic pain syndrome necessitating strong opioid medications, an antalgic/limping gait, hip arthritis with limited hip motion, decreased knee motion, deceased lumbar motion, crying spells, panic attacks despite medication, and morbid obesity.

(ECF No. 18 at 18.) She asserts that the AC further erred because it did not explain how the physician's opinion was inconsistent with her walking her dog or taking her son to the doctor and failed to assess the physician's opinion "in accordance with the regulatory check list of factors …." (ECF No. 18 at 19.)

The AC must give reasons for the weight it affords a treating source. *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) Moreover, the AC must consider the factors set forth in 20 C.F.R. § 404.1527(c), although it need only "minimally articulate" its reasoning. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This is a "very deferential standard." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

The AC's discussion satisfied this standard. Moreover, the AC did not impermissibly "play doctor" or "cherry pick" evidence in its assessment of Dr. Hughes's opinion. Rather, as it was obligated to do, it assessed the medical evidence. *Cf. Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (discussing instance of ALJ impermissibly playing

doctor). Although the AC's discussion of the evidence was not comprehensive—as rarely any discussion is—the AC did not impermissibly focus on only one line of evidence while ignoring other compelling evidence. *Cf. Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (discussing impermissible cherry-picking). Thus, the AC's assessment of Dr. Hughes's opinion is not an independent reason for remand. However, addressing the errors the court has identified may require reassessment of Dr. Hughes's opinion.

5. **Conclusion**

There was evidence that Pflughoeft was significantly limited in her ability to sit for prolonged periods. However, the AC failed to adequately include this limitation in its RFC finding or to adequately explain why it concluded that Pflughoeft was not as limited as she alleged.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of November, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge